UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUPER MARIO PLUMBING, a California corporation; and DIMITAR DECHEV, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>OLEG BELODEDOV, an individual; PETRU VERHOVETCHI, an individual; 5-STAR PLUMBING, INC., a California corporation,<br><br>Defendants. | No. 2:17–cv–02545–TLN-AC<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

This matter is before the Court pursuant to Plaintiffs Super Mario Plumbing ("Super Mario") and Dimitar Dechev's ("Dechev") (collectively, "Plaintiffs") Motion for a Preliminary Injunction (ECF No. 9). Defendants Oleg Belodedov ("Belodedov") and Petru Verhovetchi ("Verhovetchi") (collectively, "Individual Defendants") oppose. (ECF No. 13.) The corporate defendant, 5-Star Plumbing ("5-Star"), has not filed an opposition. Plaintiffs filed a reply. (ECF No. 15.) For the reasons detailed below, the Court DENIES Plaintiffs' Motion for a Preliminary Injunction (ECF No. 9).

///

///

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs allege Individual Defendants are former employees of Super Mario. (ECF No. 9-1 at 5.) Plaintiffs allege Defendants founded 5-Star as a competitor to Super Mario, although Plaintiffs allege 5-Star is not licensed as a plumber. (ECF No. 9-1 at 6.) Plaintiffs allege Defendants attempted to sabotage Super Mario's business by trying to bribe Super Mario's dispatcher to send its service calls to 5-Star instead, signing up on Angie's List as a competitor plumber, and posting fake negative reviews of Plaintiffs' services on-line. (ECF No. 9-1 at 5–6.)

Plaintiffs allege the fake negative reviews appeared on-line as early as the beginning of November 2017. (ECF No. 9-1 at 5.) Plaintiffs allege their business has dropped 25% since, which they attribute to the reviews. (ECF No. 9-1 at 9.) Plaintiffs allege they have had to reduce the work hours of two employees from full-time to part-time due to the reduction in business Plaintiffs attribute to Defendants' alleged conduct. (ECF No. 9-1 at 9; ECF No. 9-2 at 4.)

Plaintiffs allege they know the reviews are fake because the language in many of the reviews is copied verbatim from older posts about other plumbing companies in different states. (ECF No. 9-1 at 7.) Plaintiffs allege some of the fake reviews contain the names of the other plumbing companies. (ECF No. 9-1 at 8.) Plaintiffs allege they know Defendants are responsible for the fake negative reviews partly because Defendants threatened that action. (ECF No. 9-1 at 6.) Further, Plaintiffs allege Dechev confronted Verhovetchi, who denied responsibility, Dechev confronted both Individual Defendants and they laughed, and a Super Mario employee confronted Beledodov and he refused to respond to the accusation. (ECF No. 9-1 at 8–9; ECF No. 9-2 ¶ 12; ECF No. 9-3 ¶¶ 4–5.)

Plaintiffs filed a motion for a temporary restraining order moving the Court to order Defendants to remove multiple on-line posts Plaintiffs believe are fake negative reviews of Plaintiffs' services purporting to be from Plaintiffs' customers, and an order to show cause why a preliminary injunction should not issue. (ECF No. 9 at 1–2.) The Court denied Plaintiffs' motion but considered it as a motion for preliminary injunction. (ECF No. 11 at 6.) Individual Defendants filed an opposition in the form of two letters signed by them addressed to Plaintiffs' attorney and Dechev. (ECF No. 13 at 1–4.) Plaintiffs have replied. (ECF No. 15.)

## II. STANDARD OF LAW

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (emphasis added); *see also Costa Mesa City Employee's Assn. v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final determination following a trial.") (internal quotation marks omitted); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.") (internal quotation marks omitted). In cases where the movant seeks to alter the status quo, preliminary injunction is disfavored and a higher level of scrutiny must apply. *Schrier v. University of Co.*, 427 F.3d 1253, 1259 (10th Cir. 2005). Preliminary injunction is not automatically denied simply because the movant seeks to alter the status quo, but instead the movant must meet heightened scrutiny. *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a plaintiff's motion for preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits...so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, Plaintiff must demonstrate, "that [if] serious questions going to

the merits were raised [then] the balance of hardships [must] tip[ ] sharply in the plaintiff's favor," in order to succeed in a request for preliminary injunction. *Id.* at 1134–35 (emphasis added).

### III.    ANALYSIS

Plaintiffs argue a preliminary injunction, ordering Defendants to remove what Plaintiffs allege are fake negative online reviews of their business, is necessary to protect them and the public. (ECF No. 15 at 2.) Individual Defendants filed an opposition denying all of the allegations. (ECF No. 13 at 1, 3.) Plaintiffs argue the Court should not consider Individual Defendants' opposition because it was due on a Wednesday but filed the following Monday. (ECF No. 15 at 4.) The Court will accept Individual Defendants' late filing and construe it as an opposition. *Masaoka v. JPMorgan Chase NA*, 2012 WL 13018552, at *1 (C.D. Cal. May 21, 2012) (granting a pro se litigant leave to file an opposition 21 days after the deadline); *see also Visant Corp. v. Barrett*, 2013 WL 3450512, at *4 (S.D. Cal. July 9, 2013) (considering a pro se filing which included attached emails as a motion to dismiss and motion to strike, citing *Bernhardt v. L.A. Cty.*, 339 F.3d 920, 925 (9th Cir. 2003), which stated "[c]ourts have a duty to construe *pro se* pleadings liberally.").

#### A.    <u>Plaintiffs Request a Mandatory Injunction, Which is Subject to a Heightened Standard</u>

"A preliminary injunction can take two forms. A prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits. A mandatory injunction orders a responsible party to take action." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009) (internal quotation marks and citations omitted); *Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). Plaintiffs move the Court to order Defendants to remove negative reviews of Super Mario from websites. Plaintiffs request a mandatory injunction.

The Ninth Circuit has adopted a heightened standard with respect to mandatory injunctions. *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1161 (9th Cir. 2011). A mandatory injunction "goes well beyond simply maintaining the status quo"

during litigation and is "particularly disfavored." *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994). A district court should deny a mandatory injunction, "unless the facts and law clearly favor the moving party." *Id*. "In general, mandatory injunctions are not granted unless extreme or very serious damage will result[,] and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Marlyn Nutraceuticals*, 571 F.3d at 879 (internal quotation marks and citations omitted); *Garcia*, 786 F.3d at 740.

B. Plaintiffs Have Not Shown the Law and Facts Clearly Favor Their Position

A party moving for a preliminary injunction must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies*, 632 F.3d at 1135. "The first factor under *Winter* is the most important—likely success on the merits." *Garcia*, 786 F.3d at 740. Although courts consider the same factors in evaluating either type of preliminary injunction, the standard for evaluating those factors for a mandatory injunction is "doubly demanding." *Id*. The movant must show "the law and facts *clearly favor* [the movant's] position, not simply that [the movant] is likely to succeed." *Id.* (emphasis original). Thus, Plaintiffs here must show that the law and facts clearly favor their position, not simply that they are likely to succeed on the merits.

Plaintiffs argue they are likely to succeed on the merits because Defendants "fail to deny" the allegations, have a motive to post fake negative reviews to harm a competitor, benefited from fake positive reviews during the same time, and threatened to post fake reviews of Super Mario. (ECF No. 15 at 4–5.)

Individual Defendants did deny the allegations in their pro se filing. (ECF No. 13 at 1, 3) (stating "all of these accusations are false"). Only 5-Star, which cannot appear pro se in federal court, has failed to respond to Plaintiffs' motion. Additionally, Plaintiffs' argument Defendants have a motive to harm a competitor would apply equally to all other plumbing businesses.

Plaintiffs argue fake positive reviews appeared on 5-Stars's website at the same time that fake negative reviews appeared about Super Mario, and that the similarity in tactic and time make it "next to impossible" to conclude Defendants were not responsible for all of the behavior. (ECF No. 15 at 5.) Even assuming Super Mario received fake negative reviews and 5-Stars's website contains fake positive reviews, Plaintiffs do not cite any authority for the proposition that a Court

5

must infer that a company with fake positive reviews must be responsible for fake negative reviews of a competitor business.

Finally, Plaintiffs state Defendants threatened to post negative reviews. (ECF No. 15 at 5.) Plaintiffs attached a declaration from Dechev stating he contacted Defendants to discuss their disagreements and Defendants told "Dechev that if he 'poked his nose' into Defendants' business, there will be bad reviews posted online on [Super Mario's] websites aimed at [Super Mario]." (ECF No. 9-2 ¶ 7.) Individual Defendants, as noted above, deny all allegations. (ECF No. 13 at 1, 3.) Plaintiffs offer no basis for their speculation that Defendants are responsible for the negative reviews beyond Dechev's *interpretation* that Defendants threatened that behavior when Dechev spoke with them. *Levitt v. Yelp! Inc.*, No. C 10-1321 MHP, 2011 WL 13153230, at *9 (N.D. Cal. Mar. 22, 2011) (finding "no basis from which to infer that Yelp authored or manipulated the content of the negative reviews complained of by [the] plaintiffs," where the plaintiffs alleged negative reviews appeared directly after they declined Yelp's offer to improve ratings if the plaintiffs purchased advertising).

Further, in both their First Amended Complaint and their motion, Plaintiffs advance interpretations of conversations with Individual Defendants which are not supported by the attached declarations. In their First Amended Complaint, Plaintiffs allege Belodedov told a Super Mario employee named Uri, "that he would be open to negotiations, but that he believed that Uri did not have the authority to negotiate, intimating that he, [Verhovetchi] and 5-STAR were behind the negative reviews." (ECF No. 8 ¶ 20.) Plaintiffs attach the declaration of Uri Murga ("Uri") to their motion, in which Uri states he called Belodedov who refused to respond to Uri's accusations because Uri did not have "the authority to discuss it with him," but stated Belodedov would speak to someone else about the subject. (ECF No. 9-3 ¶¶ 4–5.) The declaration does not mention the word "negotiation" or the concept of being "open to negotiations."

In their motion, Plaintiffs allege that "[i]n conversations with Plaintiffs, Defendants all but admitted they posted the fraudulent and fabricated 'reviews'." (ECF No. 9-1 at 15.) Plaintiffs attach a declaration from Dechev in which Dechev states that he accused Verhovetchi of posting the fake negative reviews and Verhovetchi laughed at the accusation and stated he did not post

6

the reviews. (ECF No. 9-2 ¶ 12.) Dechev states he later saw both Individual Defendants and accused them of posting the reviews and they both laughed at him. (ECF No. 9-2 ¶ 12.) Neither declaration supports the strong conclusions Plaintiffs attribute to them.

Plaintiffs have not alleged any facts sufficient to allow the Court to draw a reasonable inference that Defendants are responsible for posting fake negative reviews of Super Mario. Plaintiffs, therefore, have not established a likelihood of success on the merits, the more lenient standard applicable to assessing prohibitory injunctions. *Kwong v. Santa Clara Cty. Sheriff's Office*, 2017 WL 4950005, at *4 (N.D. Cal. Nov. 1, 2017) (analyzing both a motion for preliminary injunction and a motion to dismiss, and finding that as the plaintiff failed to allege sufficient facts for the court to infer the defendant was liable for the misconduct, "[i]t follows that [the plaintiff] has not established that she is likely to succeed on the merits").

As Plaintiffs have not satisfied even the *Winter* standard to show a likelihood of success on the merits, Plaintiffs have not satisfied the heightened standard applicable to mandatory injunctions — to establish that the law and facts clearly favor their position. *Garcia*, 786 F.3d at 740 (stating, "In plain terms, mandatory injunctions should not issue in doubtful cases."); *Park Vill. Apartment Tenants Ass'n,* 636 F.3d at 1160.

### C. The Court Need Not Consider the Remaining *Winter* Factors

"Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, [a court] need not consider the remaining three *Winter* elements." *Garcia*, 786 F.3d at 740. Plaintiffs have not satisfied the first Winter factor, therefore, the Court need not consider the remaining *Winter* factors. Accordingly, the Court DENIES Plaintiffs' motion for a preliminary injunction.

### IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' Motion for a Preliminary Injunction (ECF No. 9).

IT IS SO ORDERED.

Dated: February 14, 2018

_____
Troy L. Nunley
United States District Judge